CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 08 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LINDA LAWSON, ) | |
| ) | Civil Action No. 7:13-cv-260 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | Hon. James C. Turk |
| Acting Commissioner of Social Security, ) | Senior United States District Judge |
| ) | |
| **Defendant.** ) | |

Plaintiff Linda Lawson ("Plaintiff" or "Lawson") brought this action for review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f. This Court has jurisdiction over the action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both Lawson and the Commissioner filed motions for summary judgment. ECF Nos. 15, 17. The Court heard argument on the motions, see ECF No. 20, and they are now ripe for disposition.

In her motion for summary judgment, Lawson contends that the Commissioner erred in concluding she was not disabled. Her primary argument is that the Administrative Law Judge ("ALJ") erred by failing to evaluate and properly credit the opinions of Dr. Robert Devereaux, one of her treating physicians. See generally ECF No. 16.

Having reviewed the record, the Court concludes that reversal is required in this case. Dr. Devereux opined in December 2011 that Lawson's physical limitations prevented her from working. The ALJ determined that opinion was entitled only to "little" weight, and instead accorded greater weight to the opinions of two non-examining physicians who reviewed Lawson's records prior to the functional evaluation and did not even have access to Dr.

1

Devereaux's report. Particularly because Dr. Devereaux's opinion was supported by the other medical evidence of record and not inconsistent with such other evidence, the ALJ's rejection of it is contrary to the Commissioner's own regulations and case law. For these reasons, explained in more detail below, the Court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment, ECF No. 17, is **DENIED**, Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**, and the case is **REVERSED** and **REMANDED** for a calculation of an award of benefits.

I.    **STANDARD OF REVIEW**

When reviewing the Commissioner's final decision, the Court is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted); Hancock, 667 F.3d at 472. If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

Lawson bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments,

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

### A. General and Procedural Background

Lawson was born on April 26, 1957, R. 47, and was fifty-four years old at the time of the ALJ's decision on January 27, 2012. Under the Act's regulations, therefore, she was "closely approaching advanced age." 20 C.F.R. § 404.1563(d). She has a ninth grade education and last attempted to work in 2006 as a home companion. R. 38-39. She previously was employed as a furniture sander, a sandwich maker, and a sock maker. R. 39, 54.

Lawson protectively filed applications for SSI and DIB on July 28, 2009. R. 15, 61, alleging an onset date of August 1, 2004. She alleged she was disabled primarily due to chronic back pain with numbness in the lower extremities, joint problems, muscle spasms, incontinence; and anxiety. R. 15, 61.

Plaintiff's claim was denied at the initial and reconsideration levels of administrative review. R. 15, 61-108, 113-126. At a December 13, 2011 hearing before ALJ Geraldine H. Page, both Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified. See R. 33-60 (transcript from hearing). The ALJ issued her decision on January 27, 2012, finding that Lawson was not disabled due to her ability to perform her past work and finding in the alternative that her RFC allowed her to perform other jobs that exist in significant numbers in the national economy. See R. 29-30; see also generally R. 15-32 (ALJ's decision).

In reaching this conclusion, the ALJ properly utilized the five-step process for

---

[2] Although the ALJ found other disabling conditions and there are medical records discussing those, the Court focuses herein on Lawson's chronic back pain, because Dr. Devereaux's opinions regarding her limitations were based primarily on that diagnosis. See R. 686-687.

determining whether a claimant is disabled. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520) (setting forth the five steps). The ALJ first determined that Lawson met the insured status requirements of the Act through September 30, 2010, and that she had not engaged in substantial gainful activity since her alleged onset date of August 1, 2004 through her date last insured. R. 17. At the second step, the ALJ concluded that Lawson had a number of severe impairments, specifically: "obesity, right shoulder sprain with degenerative changes due to a history of motor vehicle accident; mild degenerative changes of the lumbar spine; and cervical radiculopathy." R. 17. She found Lawson's urge incontinence, history of cervical carcinoma and status post hysterectomy, status post prolapsed vaginal vault, and anxiety were non-severe, either because they had been responsive to treatment or because they caused no more than minimally vocationally relevant limitations. R. 18. She concluded at the third step that none of Lawson's impairments or combination of impairments met or medically equaled the severity of any listed impairment. R. 20-21.

Based on the evidence before her, the ALJ determined that Lawson had the residual functional capacity, through the date last insured, to:

> perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant would be capable of lifting/carrying 10 pounds frequently and 20 pounds occasionally; standing/walking for 6 hours in a normal 8 hour work day; sitting for 6 hours in a normal 8 hour work day; occasionally climbing ramps and stairs, balancing, kneeling, crawling, crouching, and stooping; performing work involving frequent reaching overhead with her right upper extremity; and performing work that does not require moderate exposure to hazardous machinery, unprotected heights, climbing ladders, ropes, or scaffolds, or on vibrating surfaces.

R. 22. The ALJ relied on the VE's testimony that this RFC would allow Lawson to perform both past work and also other jobs that existed in significant numbers in the national economy. R. 27-28. Accordingly, the ALJ concluded Lawson was not disabled under the Act. R. 28-29.

Plaintiff requested Appeals Council review of the ALJ's decision, R. 1, and the Appeals Council denied review, R. 1-4, rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Lawson timely filed this Complaint seeking review of the Commissioner's decision.

B.  **Ms. Lawson's Testimony at the Hearing**

At the hearing, Ms. Lawson testified, in response to the ALJ's question as to what gives her the most problems, that it was her "lower back and [her] legs." R. 42-43. She explained that she has chronic pain, whether she is sitting or standing, that she never knows when she is going to lose control of her legs or be able to stand and that she has fallen as a result. R. 43. She described very limited daily activities consistent with that type of chronic pain, essentially lying down a lot during the day, with occasional periods of sitting up. Her teenage daughter helps to prepare Plaintiff's meals and do her laundry, and she described there a number of things she would like to be able to do around the house, but is not able to. She does engage in some limited driving and can do limited cooking or dish-washing by alternating short periods of sitting on a stool and standing. R. 44-47.

C.  **Dr. Devereaux's Report**

Shortly after the hearing, Lawson's counsel submitted a December 28, 2011 report from Dr. Robert Devereux, which was provided at counsel's request. R. 686-87. In that report, which is at the heart of this appeal, Dr. Devereaux listed a diagnosis of "chronic low back pain" and in the space for "clinical findings," wrote Plaintiff had "absent lower extremity reflexes, limited range of motion [of the] lumbar spine," and was "morbidly obese." He then filled out numerous checkboxes, indicating that she could sit, stand or walk for less than two hours each out of an eight-hour workday; and that she could lift up to ten pounds occasionally, but never any greater weight. He further opined that her symptoms would interfere with her concentration frequently,

6

produce "good" and "bad" days and that they would cause her to be absent from work more than four times a month. Critically, Dr. Devereaux expressly related these limitations back to May 29, 2007, the date that she was first seen by Dr. McMahon of Dr. Devereaux's practice. R. 686-687.

At the hearing, Lawson's attorney asked the VE whether there would be any work available to Lawson if she would miss more than two days of work per month, and the VE responded that there would not. Thus, if Dr. Devereaux's report is fully credited, is it clear that Lawson qualifies as disabled, at least from the date of May 29, 2007 forward.

## III. DISCUSSION

In her appeal to this Court, Lawson's primary argument is the ALJ erred in discounting the opinions of Dr. Devereaux. In response, the Commissioner argues that the ALJ's opinion is supported by substantial evidence. The Commissioner first disputes that Dr. Devereaux is Plaintiff's treating physician, but also contends that the ALJ properly refused to credit Dr. Devereaux's opinions because they are allegedly "inconsistent with the medical evidence of record" and because those opinions were contained on a checklist form. ECF No. 18 at 8-9. The Court does not find the Commissioner's arguments persuasive, as discussed in more detail below. Instead, the Court concludes that the ALJ erred in not giving Dr. Devereaux's opinion controlling weight, and thus that the ALJ's decision is not supported by substantial evidence.

### A. Dr. Devereaux is a Treating Physician

As to the Commissioner's contention that Dr. Devereaux is not a treating physician, the Court disagrees. First of all, it is patently inaccurate to say that he had "no examining or treatment relationship with Plaintiff," as the Commissioner argues. ECF No. 18 at 8. The records reflect that Dr. Devereaux treated Lawson and examined her on at least one occasion prior to completing his report, R. 669-672, on August 24, 2011. There is a second treatment note that is undated, although it appears to have been after the 2011 report, but it likewise references

7

Dr. Devereaux as Lawson's provider. R. 684. Importantly, moreover, the Commissioner's argument ignores the fact that Dr. Devereaux was part of the same group of physicians that had been treating Plaintiff for years, and that he had access to her medical records from that time. Thus, while he may have only begun treating her shortly before completing the requested form, and examined her only twice, the Court also takes note of that fact that he is part of the same practice group and had full access to years and years of treatment records from that group. Thus, while Plaintiff's treatment relationship with Dr. Devereux is shorter and less extensive than her relationship with Drs. McMahon and Walker of the same group, he is nonetheless a treating physician under the regulations. See 20 C.F.R. §§ 404.1502, 416.902 (a treating physician is one who "has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant").

Having determined that Dr. Devereaux is a treating physician, the regulations provide that his opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1526(c)(2); Hunter v. Sullivan, 993 F.3d 31, 35 (4th Cir. 1992). While nothing in the governing statute or regulations requires that more weight always be given to the opinions of treating sources, 20 CFR. § 416.927(d) directs the ALJ to also consider, when determining how much weight to assign a medical opinion, the supportability of the physician's opinion, the consistency of the opinion with the record, and whether the physician is a specialist. See 20 C.F.R. §§ 416.927(d)(3)-(5); see also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Thus, the Fourth Circuit has explained that there is no "absolute" rule that greater weight should be afforded to a treating physician's opinion and indeed, it may be given less weight "if there is persuasive contrary evidence." Hines, 453 F.3d at 563 & n.2 (quoting Hunter v. Sullivan, 933 F.2d 31, 35 (4th Cir. 1992)). If, for

example, the treating physician's opinion is not supported or is otherwise inconsistent with the record "it should be accorded significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). If an ALJ does not give controlling weight to a treating physician's opinion, however, the ALJ must "give good reasons" for that decision. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

**B. Dr. Devereaux's Report Is Not Inconsistent With Other Record Evidence**

Here, the ALJ gave two reasons why she rejected Dr. Devereaux's opinion, and they are the same reasons advanced by the Commissioner. R. 27. First, the ALJ claimed that the report is "not supported" by the medical evidence of record and that it was contained on a "checklist" "unaccompanied by medical examinations or reports of clinical findings."

To the extent the Commissioner argues that Dr. Devereaux's opinion is inconsistent with other evidence of record, the Court disagrees. Plaintiff has regularly visited the Giles Family Medicine practice since July 2007, and was treated primarily by Kenneth J. Walker, M.D. and Michael A. McMahon, M.D. During those visits, she has repeatedly and routinely complained of moderate and severe back pain, and her physicians have prescribed various medications to assist with the pain, including Percocet and methadone. See generally R.374-415, 421-435, 483-489, 546-679. She has also used a TENS unit to attempt to control her chronic pain and the doctors of that practice also referred her to physical therapy several times, once in 2007 and once in 2009. R. 420, 534-45, 572-73, 611-19, 627-29.

In general, those records indicate that Plaintiff has reported chronic, unchanged, or occasionally worsening symptoms and pain over the course of the alleged period of disability. See, e.g., R. 572-74, 607-11, 620-24. Her physical therapist noted as much in May 2010, as well, stating that she had reported chronic back pain and impaired mobility. The therapist also noted impaired range of motion, mobility, balance and flexibility, with functional strength deficit. R.

535. As aptly summarized by Plaintiff, the Giles Family Medicine records "document [her] persistent complaints of pain and efforts to seek relief from that pain over a span of many years" and those complaints "and related discomfort are key components of virtually every office visit at Giles Family Medicine found in the record." ECF No. 16 at .[3]

Thus, the limitations imposed by Dr. Devereaux are supported by the treatment notes of other physicians in Dr. Devereaux's practice, which reflect repeated complaints of pain and limited function by Plaintiff as well as examinations of Plaintiff showing tenderness in the lower back area and diminished reflexes. Dr. Devereaux's opinions are also supported by his own physical examination of Plaintiff on August 24, 2011, during which he found a decreased range of motion in the lower back and absent patellar and achilles reflexes. R. 669-73.

Additionally, in September 2011, Dr. Ralph Brown performed nerve conduction studies of Plaintiff. In his report, Dr. Brown characterized the results as "very abnormal" and found Plaintiff had "severe to very severe SI radiculopathy on the left[,]" severe radiculopathy on the right[,]" and "moderate radiculopathies in the bilateral L5 myotomes." R. 682. He further opined that the results were most likely the result of spinal stenosis, although he indicated he would need additional tests to determine that.[4] R. 682. In short, Dr. Devereaux's opinions are not inconsistent with other medical evidence and are further supported by Lawson's own testimony as to her limitations.

---

[3] In addition to the Giles Family Medicine records, Plaintiff reported lower back and bilateral lower extremity pain to Dr. Judy Chun, in August 2007 and severe back pain to Dr. Tamera Howell in September 2007. R. 306, 370.

[4] The Court agrees with Lawson that the ALJ misinterprets Dr. Brown's statement that there was an absence of findings of peripheral neuropathy or nerve disease in the lower extremities as somehow mitigating his findings of severe radiculopathy. Rather than being a mitigating factor, it appears form his report that Dr. Brown's purpose in stressing the absence of neuropathy or lower extremity nerve disease was to emphasize the source of Plaintiff's problem. ECF No. 16 at 7 n.3; see R. 682. That is, he was emphasizing that her symptoms are caused by damage at or near the root of nerves along the spine, as opposed to being the result of malfunction at the peripheral nerves.

### C. The Fact that Dr. Devereaux's Opinions Are Contained on a Checklist Form Does Not Invalidate Them

Finally, the Commissioner also criticizes Dr. Devereaux's opinion on the grounds that it is provided on a fill-in-the-blank form. See ECF No. 18 (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) for the proposition that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The facts in Mason, however, differ from the facts here. Specifically, in Mason, the physician who completed the form was not a treating physician; at most, he was an examining physician who provided the form in response to a vocational counselor's inquiry. Id. at 1062, 1065. Additionally, the Third Circuit noted that there was "no identifiable evidentiary corroboration of the quantitative recitals about standing and lifting" in the form report. Id. at 1066. In this case, by contrast, Dr. Devereaux's report is supported by his own examination notes and the years' worth of treatment notes by other physicians in his practice, as well as by Dr. Brown's report. See supra at Section III.B.; see also Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (acknowledging the Mason court's statement that a check-box form alone might be weak evidence, but noting that "the form takes on greater significance when it is supported by medical records.").

In short, none of the reasons given by the ALJ for discounting Dr. Devereaux's opinion are supported by substantial evidence. Instead, the Court concludes that opinion should have been given controlling weight. See Hunter, 993 F.3d at 35.

### IV. CONCLUSION

The Court has determined that the ALJ's final decision is not supported by substantial evidence. Therefore, the Court **DENIES** the Commissioner's Motion for Summary Judgment, ECF No. 17, and **GRANTS** the Plaintiff's Motion for Summary Judgment, ECF No. 15. The Court finds that plaintiff has met the burden of proof as prescribed by and pursuant to the Act, and thus enters judgment for the plaintiff. The final decision of the Commissioner will be

11

**REVERSED** and the case **REMANDED** to the Commissioner for computation and award of appropriate benefits. Specifically, benefits shall be awarded for the period beginning on May 29, 2007, which is the earliest date to which Dr. Devereaux's opinion expressly relates.

An appropriate Order shall issue this day.

ENTER: This 9th day of May, 2014.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge